What is there that you can think of that should have been done in terms of cross-examining and cross-examining, is it Velardy? Yes. That was not done because of the different burden of proof, the different nature of the case, and if I can add to that, the dual representation, which bothers me and I can have a discussion with I guess Mr. Moore about that. What is it that at trial, at the criminal trial, should have been done but wasn't done because you didn't have an opportunity to directly confront Velardy? Well, I can think of myriad questions I would have asked Mr. Velardy. This is one good relevant question. An attorney can always come up with a lot of questions, but a good relevant question would be, what should have been asked that wasn't asked? What was represented to him by Ms. Maynardi? What were his feelings with those who had, all Ms. Paling was was a closing agent. So I would ask him how did he come into this transaction. I would have questioned him very intensely on any allegations of fraud that he had to make and what the support for those allegations would be. There were no questions at all asked along those lines. And frankly, it was in Ms. Paling's interest to confine the questioning to issues of negligence, because then she would be entitled to coverage under the policy, which as Mario has just heard before this argument, and to not bring it within the realm of fraud. So she was asked, the witness, Velardy, was asked largely procedural questions about the nature of the closing and what Ms. Paling's role was. And the essence of the testimony was that she had shown him documents, that she had not explained to him the meaning of the documents, that she went through the closing fairly fast, asking to sign various documents without any kind of explanation. That's the essence of the testimony. Then he's asked about this over $2,000 check, whether it was cashed. He says he did recall getting a check. He doesn't remember whether he cashed it. That bit of testimony was corroborative if one wanted to look at it that way, of Ms. Velardy who said that Ms. Paling had shredded the check at the time of the closing. Ms. Velardy was a principal witness against Ms. Paling. And what the government was looking to do was to corroborate in some way her testimony. And it used this section of deposition transcript for that purpose. The judge never made, although there was no question that the witness was unavailable given that he was deceased, there was a question whether there was a substantially similar degree of interest in prevailing. Why wasn't there? They were similar? Similar cases? Very different cases, Your Honor. Again, there is this conflict of interest with the attorney. The attorney himself, who was insured, was an unindicted co-conspirator in Ms. Paling's case later on. Now, there was no criminal complaint or indictment pending. Back up. Is that on record, anyone? Yes. You're talking about the attorney who represented, I guess it was the insurance company in the fraud action? Yes. Was an unindicted co-conspirator? Yes. But both cases contained a fraud. Oh, sorry. Both. He's in the attorney's district plan. Right. I am. Okay. Okay, so you're right. I apologize for my own confusion, which is not unusual. Okay. But the fact is. And we know neither lawyer was you. I'll make that clear. You had a lawyer representing. Clearly, their interests were potentially in conflict. He was the attorney in the deposition. Yes. He's representing two parties, both accused of a fraud in a civil setting. I'm going to take you off track just a little bit. The government made an argument that this was invited error. And I go back in the record. Ms. Honing, she proffers, she says, I'd like this to be read in. The court then says, I'll let defense counsel add anything else. The disputed testimony here was what defense counsel put in. How can they come now to complain when they put it in themselves? Well, I think what the defense attorney was arguing is that there was deposition testimony that differed from the interrogatories that had been completed by Mr. Blardin. But the particular passage you're talking about was actually proffered or suggested to be read by defense counsel. I'm not looking at that in isolation, Your Honor. I don't the defense attorney did object to the deposition transfer going in. There was an objection? Yes. There's clearly an objection to that. It came at the very start of the trial. I think it's in DA 55 or thereabouts in the appendix. So there clearly wasn't, and there was discussion about it. But the judge never at any time ruled that there was substantially similar motive to question. Well, how about the invited error issue? Because you didn't get to brief it. So if you want to talk about it. It's the government. The invited error doctrine is really one that is premised upon the court not having adequate opportunity to review the issues in context and another party having invited the court to act. In this case, it was the government that was proffering the transcript section. I don't see this in any way as. But the one you're complaining about was proffered by your defense lawyer. I'm complaining not about the one answer given to one question. Okay. I'm complaining about the transcript going in. And the government had offered that transcript. And that was contested at the outset. That's what I'm complaining about. The judge then said to the attorney at some point, and I can find it if you'd rather like, he said to the attorney, you can offer other sections of the deposition, if you like, that would show that perhaps the interrogatories vary. 72 of the appendix, yeah. I'll also admit any other portions of the transcript that Mr. Colasanti believes undermine or impeaches the testimony. Yeah, but that doesn't cure the problem. Because the fact is that the issue of fraud, which was at the core of the government's complaint or indictment, was not gone into. And there was no reason to go into it. It was in Ms. Poehling's interest to confine the issue. Isn't that harmless error, Mr. Zagos? Not at all, Your Honor. Not in this context. Ms. Maynardi. Well, now, wait a minute. As I read the briefs and the appendix and the argument, and Judge Chigaris's very acute comments to you just now, the part that is objected to was the part that came in under 806, the evidence rules. If that's not, if the part that the government put in is not an argument that is, in effect, immaterial, as I gather your argument says, then why isn't the government's position that it's harmless error in any effect, although they try to justify it on a number of other points, including not making an objection and having you subject to the plain error rule. But if it's harmless error, it's harmless error. It was not harmless error, Your Honor. What did they say in the deposition that was not harmless error? Let me give you, Your Honor, an example from the deposition. I have it here. Tell me what lines or what pages. Okay. Beginning on DA-1277, Your Honor, line 20. Is this the supplemental appendix? No, this is the defendant's appendix. Okay. I'm sorry, what was the page number again? 1277, Your Honor. Great. Line 20. The question is, prior to showing you any documents, did she discuss with you or make any representations to you regarding the structure of the transaction? No. Did she explain to you anything about the use of a third-party investor? Answer, no. Later on, he's asked, what documents did she present to you to sign at the closing? Answer, I don't recall. I never got a copy. I never got nothing. Question, well, you didn't get a copy, but you signed them at the closing, right? Answer, I signed some documents. Question, okay, and they were presented to you individually for signature at the closing. Answer, just in a little pile like this, just a few pages. Question, did she explain to you what each document was? By she, I mean Ms. Poehling. Answer, no. No. Did he ask her what the documents were? Answer, no. And later he goes on to talk about being rushed through this process. And one can look at the entire line of questioning as being aimed at uncovering whether Ms. Poehling had performed her obligations by presenting the documents to the witness at closing, or if he had some objection to the way that she proceeded, what those objections were, all of which would go to the issue of negligence. Did Ms. Poehling properly discharge her responsibilities as a closing agent for the attorney that she was employed by? And that, in large measure, is how this can be read, simply as attempting to was the cause of the injury allegedly suffered by the witness. There was no, there's clearly no probing into issues of fraud. And as I say, it may well have been in the best interest of all that that not be done, because Ms. Poehling would have coverage if the claim were confined to negligent action on her part. So it's understandable why that could occur. But she also did have the same attorney representing her, who I would submit had divided responsibilities, and particularly where there were allegations of fraud. That should not occur. It should not occur any more than it would occur in a criminal case. And there was no waiver of any potential conflict? Not that I'm aware of, no, Your Honor. Not at all. And that, in a nutshell, and I would submit that if one looks at the standards in Crawford, which were intended to provide a greater right of confrontation to defendants than had been previously allowed under Roberts, and then we look at the standard as it's developed with respect to what constitutes liability and when is there an opportunity to cross-examine in advance of a trial where that testimony, where the testimony listed, it can be used, one would have to conclude that this particular cross-examination, which was admitted into this trial, had a contaminating effect because it could be read to corroborate the I don't think there's any doubt about that. And I can also say, as a trial attorney, I don't think there's any right a defendant has more potent and more important than the right of confrontation. And I can't imagine that if this same witness appeared at trial, who appeared at the deposition, were questioned in the same way that Mr. Calisanti questioned other witnesses, he would in no way have limited himself to what the source of the deposition was for.